United States District Court
Southern District of Texas
**ENTERED**
September 23, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EZRA HERSCHBERGER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-2550 |
| | § | |
| BOBBY LUMPKIN, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate represented by counsel, filed a First Amended Complaint ("FAC") against Director Bobby Lumpkin ("Lumpkin"), Executive Director Bryan Collier ("Collier"), Deputy Executive Director Oscar Mendoza ("Mendoza"), Regional Director Stephen Bryant ("Bryant"), Assistant Warden Christopher Lacox ("Lacox"), unknown prison officer John Doe ("Doe"),[1] and the Texas Department of Criminal Justice ("TDCJ") (collectively "the defendants").

Plaintiff asserts claims against defendant TDCJ for alleged violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("RA"), and state common law breach of contract. (Docket Entry No. 40.) He sues the individual defendants in their official and individual capacity for violation of his Eighth Amendment rights. The

---

[1] The Office of the Attorney General of Texas filed an Amicus Curiae Advisory notifying the Court that after a diligent search based on the information provided by plaintiff in his pleadings, counsel was unable to identify Doe without more information from plaintiff. (Docket Entry No. 37.) Because Doe remains unidentified, the Office of the Attorney General does not represent him in these proceedings. (Docket Entry No. 43, p. 1 n.2.)

defendants filed a motion to dismiss (Docket Entry No. 43),[2] to which plaintiff filed a response (Docket Entry No. 44) and the defendants filed a reply (Docket Entry No. 48). Defendant Doe, who remains unserved, was not joined in the motion.

Having considered the motion, the response, the reply, the pleadings, the record, matters of public record relied upon by plaintiff, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss, as shown below.

## I.  BACKGROUND AND CLAIMS

Plaintiff describes himself as blind in one eye and hard of hearing.  He alleges in the FAC that on September 1, 2017, while housed at the Estelle Unit, defendant John Doe closed the prisoners' cell doors without first "walking the run" to clear the doors or verbally announcing that the doors were being closed.  As a result, plaintiff's finger became trapped in his cell door and a portion of the fingertip was severed.  In responding to plaintiff's ensuing administrative grievances, prison officials acknowledged that prison officers were required to announce the movement of doors.

Plaintiff claims that TDCJ discriminated against him under the ADA and RA by failing to accommodate his visual impairments at the Estelle Unit.  He further claims that TDCJ breached a May 22, 2017, settlement agreement reached in an earlier ADA/RA lawsuit, *Wilson v. Livingston*, C.A. No. 4:14-CV-01188 (S.D. Tex.), that required certain safety protocols for visually impaired inmates at the Estelle Unit.  Plaintiff asserts claims

---

[2]Although the defendants include TDCJ officer Wayne Brewer as a defendant in the motion to dismiss, plaintiff did not name Brewer as a defendant in the FAC.

against the individual defendants in their official and individual capacity for deliberate indifference to his safety and failure to train and supervise prison employees. Plaintiff seeks declaratory judgments as to all three claims, monetary damages, and injunctive enforcement of the 2017 *Wilson* ADA/RA settlement agreement.

The defendants seek dismissal of plaintiff's claims under Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a viable claim for relief. The defendants contend that plaintiff's claims for monetary damages against the individual defendants in their official capacities should be dismissed for lack of subject matter jurisdiction under FRCP 12(b)(1) as barred by Eleventh Amendment immunity. The defendants further argue that the Court lacks subject matter jurisdiction over plaintiff's state law claims against TDCJ for breach of contract, and that TDCJ is entitled to sovereign immunity as to plaintiff's claims under the ADA and RA.

The defendants additionally contend that plaintiff's claims should be dismissed under FRCP 12(b)(6) because plaintiff (1) cannot resurrect his deliberate indifference claims that were previously dismissed and waived on appeal; (2) alleges only conclusory allegations against the individual defendants; and (3) fails to state a viable claim under the ADA or RA against defendant TDCJ. The defendants further claim that the individual defendants are entitled to qualified immunity as to plaintiff's claims for failure to train and supervise.

3

## II.  LEGAL STANDARDS

A.      FRCP 12(b)(1)

A party may move to dismiss a case under FRCP 12(b)(1) when it seeks to challenge a district court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1).  "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).  The burden of proof for a FRCP 12(b)(1) motion is borne by the party claiming jurisdiction. *Id.*  When, as in the instant case, more than one FRCP 12 motion has been filed, "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

B.      FRCP 12(b)(6)

To survive a FRCP 12(b)(6) motion to dismiss, a complaint need not plead detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief, including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  A plaintiff is not required to prove his case at the pleading stage, and motions to dismiss are intended to determine not whether the plaintiff

will ultimately prevail on his claims, but whether the complaint is sufficient "to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

Generally, a plaintiff is required to provide only a plausible "short and plain" statement of his claim. *Id*. The plausibility standard set forth in *Twombly* is met when the complaint pleads "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" in support of the alleged claims. *Twombly*, 550 U.S. at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Conclusory allegations will not defeat a FRCP 12(b)(6) motion. *Guidry v. Bank of LePlace*, 954 F.2d 278, 281 (5th Cir. 1992).

In the context of a FRCP 12(b)(6) proceeding, the court must "accept all well-pleaded facts in the complaint as true and view the facts in the light most favorable to the plaintiff." *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 304 (5th Cir. 2019). Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the ground upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

C.    Supplemental Jurisdiction

A federal court may exercise supplemental jurisdiction over state law claims when they are so related to claims within the original jurisdiction that they form part of the same case or controversy. *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). A district court may decline to exercise supplemental jurisdiction over a claim if (1) the claim raises a novel

or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

### III.  ANALYSIS

A.    FRCP 12(b)(1) – Eleventh Amendment/Sovereign Immunity

Plaintiff seeks, *inter alia*, monetary damages against the individual defendants in their official capacity.  The defendants argue that as they are government officials, plaintiff's claims must be dismissed for lack of subject matter jurisdiction under the Eleventh Amendment and as barred by sovereign immunity.

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. This restrictive provision applies to any suit brought by an individual to which the State has not consented. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996).  If an action is brought against a state official in his official capacity, the action is effectively against the State, and a federal court hearing the action cannot award monetary damages against that state official. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (determining that the lawsuit "is no different from a suit against the State itself"); *Houston v. Zeller*, 91 F.

6

App'x 956, 957 (5th Cir. 2004) ("[A] state official sued in his or her official capacity is not a 'person' who can be sued for purposes of liability under § 1983.").

Plaintiff here sues the individual defendants for compensatory damages and declaratory relief for failure to train and supervise. These defendants are state officials employed by TDCJ, a state agency. Thus, plaintiff's claims for monetary damages against them in their official capacity constitute an action against the State of Texas, and one to which it has not consented. The defendants correctly argue the individual defendants are immune under the Eleventh Amendment and that plaintiff's claims against them must be dismissed under FRCP 12(b)(1). Plaintiff's Eighth Amendment claims for monetary damages and a declaratory judgment against the individual defendants in their official capacity are **DISMISSED WITHOUT PREJUDICE**.

Plaintiff contends, on the other hand, that Eleventh Amendment and sovereign immunity have no application to his claims arising under the ADA and RA. He argues that TDCJ has waived sovereign immunity as to his RA claims because TDCJ receives federal funding and the defendants' conduct violated the Eighth Amendment. Under the RA, "public entities that accept federal financial assistance expressly waive their Eleventh Amendment immunity from claims brought under § 504 of the RA." *Durrenberger v. Texas Dep't of Criminal Justice*, 757 F. Supp. 2d 640, 647 (S.D. Tex. 2010); 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of

7

1973 . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.").

In his FAC, plaintiff alleges that TDCJ is the state agency that operates Texas state prisons and that TDCJ is a regular recipient of federal funding. (Docket Entry No. 40, ¶5.) Thus, to the extent that plaintiff has alleged a viable claim under section 504 of the RA, the defendants' FRCP 12(b)(1) motion to dismiss the claim is **DENIED**.

Plaintiff additionally claims that defendant TDCJ is not entitled to sovereign immunity as to his ADA claims, citing *U.S. v. Georgia*, 546 U.S. 151, 159 (2006).  He argues that under *Georgia*, if the state's alleged conduct violates Title II of the ADA, Title II validly abrogates state sovereign immunity if the misconduct also violates the Fourteenth Amendment.[3]  For purposes of the pending motion to dismiss, the Court has retained plaintiff's Eighth Amendment claim for failure to train and supervise.  The parties note, however, that *Georgia* applies only to plaintiff's claim for damages: "Thus, insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.*  The defendants' FRCP 12(b)(1) motion to dismiss plaintiff's claims for a declaratory

---

[3]The parties do not dispute that any distinction between an Eighth Amendment claim and a Fourteenth Amendment claim is of no moment in this instance. "Because the Eighth Amendment applies to the states through the Fourteenth Amendment, an ADA violation that is also an Eighth Amendment violation actually violates the Fourteenth Amendment." *Valentine v. Collier,* 993 F.3d 270, 281 (5th Cir. 2021).

8

judgment under Title II of the ADA is **GRANTED**.  The defendants' FRCP 12(b)(1) motion

to dismiss plaintiff's claims for damages under Title II of the ADA is **DENIED**.

B.      FRCP 12(b)(6) – Claims under the ADA and RA

Plaintiff asserts that because he is blind in one eye and hard of hearing, he is a

qualified individual with a disability under the ADA and RA.  He alleges that defendant John

Doe's failure to give verbal warnings or walk the runway before closing the cell doors on

September 1, 2017, discriminated against him based on his visual impairment, thus violating

the ADA and RA.  He further alleges that the defendants knew plaintiff was visually

impaired, that he was housed in an area for disabled inmates, and that their conduct caused

him physical injury.  Prison officials acknowledged in their response to plaintiff's grievance

that "Officers are to announce the movement of doors."  (Docket Entry No. 40, Exhibit C.)

The defendants seek dismissal of plaintiff's ADA and RA claims against the TDCJ

under FRCP 12(b)(6).  To establish a prima facie case under Title II of the ADA, a plaintiff

must show that (1) he is a qualified individual under the statute; (2) that he is being excluded

from participation in, or being denied benefits of, services, programs, or activities for which

the public entity is responsible, or is otherwise being discriminated against by the public

entity; and (3) that such exclusion, denial of benefits, or discrimination is due to plaintiff's

disability.  *Lightbourn v. County of El Paso*, 118 F.3d 42, 428 (5th Cir. 1997).  The third

factor may be met under a theory of failure to accommodate.  *Windham v. Harris County*,

875 F.3d 229, 235 (5th Cir. 2017).  A plaintiff asserting a private cause of action under the

ADA or RA may recover compensatory damages only upon a showing of intentional discrimination. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2022). In this instance, plaintiff claims that the defendants intentionally discriminated against him and failed to provide a reasonable accommodation to his visual disability by not affording him a verbal warning that the doors were closing and by failing to walk the runway beforehand.

To assert a claim under the RA, a plaintiff must show that (1) he is a qualified individual with a disability; (2) the facility receives federal funding; and (3) he was adversely treated solely by reason of his disability. *Melton v. Dallas Rapid Area Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004). Plaintiff alleges that he was adversely treated by reason of his disability when the defendants failed to provide verbal warnings or walk the runway prior to closing the doors.

The Court finds that plaintiff has pleaded the required minimum of factual allegations sufficient to surmount the defendants' FRCP 12(b)(6) motion as to these claims. The motion to dismiss plaintiff's ADA and RA claims for compensatory damages is **DENIED**.

C.      FRCP 12(b)(6) – Claims for Deliberate Indifference and Failure to Protect

In his original *pro se* complaint and more definite statement, plaintiff claimed that his constitutional rights were violated "due to officer not ensuring my personal safety and officers refusing to follow TDCJ policy, which states he must walk the run to insure [*sic*] that no one is caught in the doors before opening or closing doors." (Docket Entry No. 11, p. 1.) Plaintiff alleged that because prisoners' "beds are about two inches from open bars and when

10

asleep a prisoner could possibly put a hand or foot through the bars without knowledge of the doors being opened or closed. Which could cause said offender to be injured by the doors. Due to officers neglect to walk the run to ensure the safety of use." *Id.*, p. 2. He claimed that, as a result of the wing officer not following Assistive Disability Services ("ADS") policy, his finger was caught in the door. *Id.*

Plaintiff stated that ADS policy required "officers to use ADS lights and buzzers and walk the run to ensure the safety of the offenders and announce that doors are being opened or closed." *Id.* Plaintiff claimed that the wing officer's negligence and failure to follow TDCJ protocol for closing the cell doors caused his injuries. *Id.*, p. 5.

The Court construed plaintiff's allegations as raising Eighth Amendment claims for failure to protect, deliberate indifference, and failure to follow prison policy, and dismissed the claims on June 11, 2019, premised on his failure to allege that the officers knew of, and disregarded, a substantial risk to plaintiff's safety. The Court further found that plaintiff's allegations did not show that he faced an obvious risk to his personal safety, that the defendants deliberately failed to protect his personal safety, or that failure to follow prison regulations raised an Eighth Amendment violation. (Docket Entry No. 16, pp. 8–11, 13–14.) The dismissal of plaintiff's Eighth Amendment claims was with prejudice. *Id.*, p. 15.

Plaintiff appealed the dismissal of his lawsuit, but challenged the dismissal of claims other than the Eighth Amendment claims. On appeal, the Fifth Circuit Court of Appeals noted that plaintiff had challenged the dismissal of his ADA and RA claims for failure to

exhaust, "but [did] not brief any arguments he might have against the district court's other grounds for dismissal and has thus waived these issues on appeal." *Herschberger v. Lumpkin*, Appeal No. 19-20481 (5th Cir. Feb. 9, 2021). (Docket Entry No. 32.)  The Fifth Circuit vacated the dismissal as to plaintiff's ADA and RA claims for failure to exhaust and remanded the case.  Thus, the dismissal of plaintiff's Eighth Amendment claims with prejudice was not challenged or vacated on appeal.

Following remand, counsel for plaintiff made an appearance in this case and filed the FAC.  In the FAC, plaintiff raises claims for deliberate indifference to his safety and for failure to train and supervise. (Docket Entry No. 40, pp. 6–7.)  Specifically, he alleges that

> Defendant John Doe knew of and disregarded an excessive risk to [his] safety and the safety of other visually impaired inmates when he closed the cell door without walking the run or giving a verbal warning that the door was about to close.  Defendant John Doe's deliberate indifference to [plaintiff's] safety violates the Eighth Amendment and breaches Defendant John Doe's constitutional duty to take reasonable measures to guarantee the safety of the inmates.

*Id.*, p. 6.

The defendants argue that these Eighth Amendment claims must be dismissed, as the Court's earlier dismissal of the claims was not set aside on appeal.  In response, plaintiff contends that the Eighth Amendment claims raised in his FAC are different from those that were raised in the original complaint and dismissed with prejudice.  However, the Court has carefully compared the original claims to the amended claims and finds that the amended claims for deliberate indifference to safety are substantially the same as plaintiff's original

claims. Because the Court dismissed these claims with prejudice and the Fifth Circuit found that any challenge to the dismissal of the claims was waived on appeal, the claims may not be reasserted here. Plaintiff's Eighth Amendment claims for deliberate indifference to his safety are **ORDERED STRICKEN** from the FAC.

Plaintiff's Eighth Amendment claims against the defendants for failure to train and supervise, however, require a separate analysis.

D.      FRCP 12(b)(6) – Failure to Train and Supervise

Plaintiff complains that the defendants failed, and continue to fail, to train and supervise Estelle Unit officers as to the *Wilson* protocols and that the protocols are not being followed at the unit. Plaintiff does not plead these allegations as a claim for failure to follow prison policy; rather, he contends that the allegations give rise to claims for failure to train and supervise.

The defendants contend that these claims were dismissed with prejudice by the Court in its earlier dismissal order of June 11, 2019. Plaintiff disagrees, pointing out that the claims were not raised prior to the dismissal and were not expressly included in the dismissal order. An examination of plaintiff's original complaint reveals no mention of a failure to train or supervise, either expressly or as a matter of liberal construction. Nor did plaintiff complain in his step 1 and step 2 grievances of a failure to train or supervise. (Docket Entry No. 1, pp. 8–11.) Although plaintiff complied with the Court's order to file a more definite statement, the statement did not complain of the defendants' failure to train or supervise. (Docket Entry

13

No. 11.) The Court's dismissal order of June 11, 2019, did not dismiss any claims for failure to train or supervise.

The Court finds that plaintiff's claims for failure to train and supervise were not waived by the appeal. The Court further finds that plaintiff has pleaded the required minimum of factual allegations sufficient to surmount the defendants' FRCP 12(b)(6) motion as to these claims. The motion to dismiss plaintiff's Eighth Amendment claims against the individual defendants in their individual capacity for monetary compensation and a declaratory judgment for their failures to train and supervise is **DENIED**.

E.     Defendant John Doe

In his original complaint, plaintiff sued TDCJ employee John Doe for his failure to protect and/or for deliberate indifference to plaintiff's safety. Plaintiff claimed that John Doe was the officer who closed the cell doors on September 1, 2017, without giving a verbal warning or walking the run.

As noted earlier, all of the ADA, RA, and Eighth Amendment claims raised by plaintiff in his original complaint were dismissed with prejudice in an earlier order of this Court. (Docket Entry No. 16.) The Court expressly dismissed plaintiff's failure to protect and/or deliberate indifference claims against defendant Doe. *Id.*, p. 10. Although plaintiff appealed the dismissal, he challenged only the dismissal of his ADA and RA claims; he did not challenge the dismissal of his Eighth Amendment claims. On appeal, the Fifth Circuit Court of Appeals stated that, by not challenging on appeal the dismissal of his Eighth

14

Amendment claims, plaintiff waived the dismissal of those claims. Consequently, the Fifth Circuit's reversal and remand of plaintiff's ADA and RA claims did not include his Eighth Amendment claims, including those raised against defendant Doe.

Following remand, plaintiff filed his FAC, improperly repleading his Eighth Amendment claims for failure to protect and/or deliberate indifference to his safety. The Court has here ordered those claims stricken from the complaint. Plaintiff's current Eighth Amendment claims for failure to train and supervise are specifically pleaded against only defendants Lumpkin, Collier, Mendoza, Lacox, and Bryant. (Docket Entry No. 40, ¶ 26.)

As a result, no factual allegations raising a viable claim for relief have been pleaded in the FAC against defendant John Doe, and John Doe is **DISMISSED WITHOUT PREJUDICE** as a party to this lawsuit.[4]

F.     Qualified Immunity

The individual defendants contend that they are entitled to qualified immunity and that plaintiff's claims against them in their individual capacity for failure to train and supervise should be dismissed.

The doctrine of qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal citations

---

[4]The Court notes that plaintiff's FAC naming John Doe as a defendant has been on file for a year without Doe being identified or served with process.

omitted).   "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.   When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).  To defeat qualified immunity here at the motion to dismiss stage, plaintiff must allege that the individual defendants violated his Eighth Amendment rights as to failure to train and supervise, and that their actions were objectively unreasonable in light of clearly established law as of the time of the violations. *See, e.g.*, *Villareal v. City of Laredo*, \_\_\_ F.4th \_\_\_\_, 2022 WL 3334699, \*3 (5th Cir. Aug. 12, 2022).  The crucial question in this inquiry is whether a reasonable officer would understand that what he was doing at the time of the incident violated a constitutional right.  *Id*.  A plaintiff must demonstrate that the defendant's conduct was objectively unreasonable in light of legal rules clearly established at the time of the defendant's actions.  *See Thomas v. City of Dallas*, 175 F.3d 358, 364 (5th Cir. 1999).  A right is clearly established when it is defined "with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct."  *McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th Cir. 2002).

Although a plaintiff need not identify a case directly on point to satisfy this burden, he must identify case law "plac[ing] the statutory or constitutional question beyond debate."

16

*Id.* at 741. Only if the violation is of a right that was "clearly established" at the time can the plaintiff defeat the defendant's invocation of qualified immunity. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). That is, a plaintiff must successfully allege that the defendants violated a statutory or constitutional right, and that the right was "clearly established" at the time of the challenged conduct. *Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021).

Plaintiff has not responded to the defendants' claims raising the defense of qualified immunity. (Docket Entry No. 44.) The Court has examined the FAC and finds that plaintiff alleges that the individual defendants failed to train and supervise prison officers and that the failures resulted in his physical injury. Specifically, plaintiff asserts that the individual defendants' failure to train and supervise the Estelle Unit officers as to providing verbal warnings and walking the run prior to closing the doors on September 1, 2017, violated his Eighth Amendment protections and resulted in his physical injury. However, this is insufficient to surmount the defendants' claim for qualified immunity. Plaintiff does not establish the violation of a right that was "clearly established" at the time of his injury; that is, he does not show that his legal right to verbal warnings or a "walking the run" prior to the defendants' closing the prison cell doors was clearly established as of September 1, 2017.

Plaintiff is represented by counsel and filed no opposition to the defendants' motion to dismiss predicated on qualified immunity. Thus, he has not met his burden of establishing inapplicability of their qualified immunity defense, and the defendants' motion is **GRANTED**. Plaintiff's claims for failure to train and supervise brought against the

individual defendants in their individual capacity are **DISMISSED WITH PREJUDICE** as barred by qualified immunity.

     G.    _Wilson_

Plaintiff claims that defendant TDCJ is liable under state law for breach of the May 22, 2017, settlement agreement reached in _Wilson v. Livingston_, C.A. No. 4:14-CV-01188 (S.D. Tex. Dec. 1, 2014).  He argues that, in _Wilson_, TDCJ agreed that Estelle Unit officers would yell "open door" or "close door" before activating the doors and walk to the end of the run and back to check for inmates in the doorways prior to closing the cell doors; that the Estelle Unit risk manager and warden would train and enforce the auditory warning policy and walking the run policy twice per year at monthly safety meetings; and that the policies would become part of the Estelle Unit on-the-job training program.[5]

The defendants argue that plaintiff was not a party in _Wilson_ and the agreement was not made a part of the judgment in that case.  They contend that for those reasons, this Court is without jurisdiction to enforce the _Wilson_ agreements and that plaintiff's breach of contract claims must be dismissed.  "Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." _Kokkonen v. Guardian Life Ins. Co. of America_, 511 U.S. 375, 377 (1994). The law presumes that a claim lies outside a court's

---

[5] Plaintiff cites to the _Wilson_ hearing transcript, attached as Exhibit B to his FAC in this lawsuit.  (Docket Entry No. 40-2.)

limited jurisdiction, and the burden lies with the plaintiff, as the party invoking the court's

jurisdiction, to establish that it extends to his claims.  *Id.*[6]

The bases for plaintiff's current claims as to the *Wilson* settlement agreement appears

three fold:  (1) breach of contract, enforceable under state law; (2) declaratory judgment

under federal law that TDCJ violated the agreement; and (3) injunctive enforcement of the

*Wilson* settlement provisions.  Each of these grounds will be separately discussed.

        i.    <u>Breach of Contract</u>

As an initial observation, the Court notes that an executed final settlement contract

was not filed of record in the *Wilson* case, and the Court dismissed the case with prejudice

on April 5, 2018, pursuant to the parties' stipulation of dismissal.  As a result, the actual

terms of any executed final settlement contract are not of record before this Court.  More

importantly, there is no indication that a settlement contract was finalized and executed prior

to the instant incident of September 1, 2017, or that the executed final settlement contract

required implementation of any particular warning protocols as of that date.[7]  Although the

Court dismissed *Wilson* on May 22, 2017, pursuant to the parties' in-court settlement

announcement, the parties were allowed to move to reopen the case through May 21, 2018,

---

[6]The Court notes that the *Wilson* district court did not incorporate the parties' settlement agreement or explicitly retain jurisdiction over the agreement in its dismissal order and final judgment.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378, 381–82 (1994).

[7]In fact, the *Wilson* case docket evinces that a final settlement contract had not been executed as late as February 15, 2018, when TDCJ informed the Court that additional time was needed.  *See* Docket Entry No. 179, C.A. No. 4:14-CV-01188 (S.D. Tex.).

*one year* after the settlement announcement. A final stipulation of dismissal with prejudice was not entered until April 4, 2018, well after the incident made the basis of the instant lawsuit, and no settlement or enforcement terms were made part of the judgment. In short, plaintiff's factual allegations and exhibits do not establish that a settlement contract had been finalized and executed as of the date of plaintiff's incident in the instant lawsuit.[8] Consequently, plaintiff's pleadings do not plead factual allegations sufficient to show that a breach of contract claim would be appropriate as to plaintiff's assertions that TDCJ violated a settlement agreement prior to or as of September 1, 2017. In short, plaintiff pleads no factual allegations sufficient to support his claim that TDCJ breached a settlement contract on September 1, 2017, at the Estelle Unit and that he was injured as a result.

Even assuming a formal settlement contract had been finalized and executed in *Wilson* as of September 1, 2017, Texas state law provides no basis for its enforcement by plaintiff in the instant lawsuit. "The fact that a person might receive an incidental benefit from a contract to which he is not a party does not give that person a right of action to enforce the contract." *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995

---

[8]As noted earlier, plaintiff attached a copy of the Wilson hearing transcript as an exhibit to the FAC. (Docket Entry No. 40-2, Exhibit B.) The transcript clearly shows that the preliminary settlement agreement of May 22, 2017, was an "agree[ment] in principal" and that the parties would "work in good faith to formally negotiate a final document." *Id.*, p. 5. It was expressly stated that a final settlement agreement was subject to approval by Texas Attorney General Ken Paxton, the Governor of Texas, and the Texas Comptroller. *Id.*, pp. 7, 17. At the time of the hearing, only the Texas Department of Criminal Justice had agreed to the settlement terms in principal. *Id.* Accordingly, the Court declines to construe and enforce as a final contract the tentative settlement provisions read into the record on May 22, 2017.

S.W.2d 647, 651 (Tex. 1999); *see also Basic Capital Management, Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 899–900 (Tex. 2011). "A third party may recover on a contract made between other parties only if the parties intended to secure a benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002); *see also MCI Telecommunications Corp.*, 995 S.W.2d at 651. The Texas Supreme Court holds clear that "[a] court will not create a third-party beneficiary contract by implication" and that "[t]he intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Id.*

Plaintiff does not allege in the FAC that he was a party to the *Wilson* lawsuit or a named beneficiary to the formal finalized settlement contract. Counsel for plaintiff and TDCJ in *Wilson* made no mention during the hearing that the door warning protocols were intended for the direct benefit of plaintiff in the instant lawsuit. Although plaintiff avers upon "information and belief" that the executed settlement agreement "reflect[ed] the intent of the parties for TDCJ to effect change that would benefit all visually impaired inmates housed at the Estelle Unit" (Docket Entry No. 40, ¶ 28), this is not a factual allegation indicating that the settlement agreement clearly and fully intended to contract or confer a direct benefit to plaintiff as a third party. To the contrary, plaintiff is asking this Court to create a third-party beneficiary contract in his favor by implication, which is precisely what the Texas Supreme Court prohibited in *MCI Telecommunications Corp.*

Plaintiff's factual allegations and exhibits do not show that a final, executed and enforceable contract for implementation of door warnings existed in *Wilson* as of September 1, 2017, or that plaintiff here has a right under state law to enforce such contract. Accordingly, the Court declines to exercise supplemental jurisdiction as to plaintiff's state law claims for breach of contract, and the claims are **DISMISSED WITHOUT PREJUDICE**.

ii.    <u>Declaratory Judgment</u>

For the same reasons as above, the Court cannot enter a declaratory judgment finding that defendant TDCJ violated the *Wilson* settlement agreement on September 1, 2017. Plaintiff's claims for a declaratory judgment as to the incident of September 1, 2017, vis-a-vis a settlement contract in *Wilson*, is **DISMISSED WITHOUT PREJUDICE**.

iii.    <u>Injunctive Enforcement</u>

Plaintiff further asks the Court to enforce by injunction the agreements reached in the *Wilson* settlement agreement for providing safety warnings and training for opening and closing prison doors at the Estelle Unit. Again, plaintiff was not a party to the *Wilson* lawsuit, and plaintiff's factual allegations here show that he was not named as a beneficiary to any rights afforded in the settlement agreement. Although plaintiff might arguably reap some benefit or advantage from the *Wilson* settlement protocols simply by virtue of being a partially blind inmate housed at the Estelle Unit, this falls short of his being a specific and intended beneficiary under the terms of the executed settlement contract.

22

Plaintiff has no right to enforce the *Wilson* executed final settlement agreement in his own name, and his claim for injunctive enforcement of the settlement agreement is **DISMISSED WITHOUT PREJUDICE**.

## IV.  CONCLUSION

For the above reasons, the Court **ORDERS** as follows:

1. The defendants' FRCP 12(b)(1) and FRCP 12(b)(6) motions to dismiss (Docket Entry No. 43) is **GRANTED IN PART** and **DENIED IN PART**.

2. Defendant John Doe is **DISMISSED WITHOUT PREJUDICE** as a party to this lawsuit.

3. Plaintiff's Eighth Amendment claims for deliberate indifference to his safety and/or failure to protect are **STRICKEN** from the First Amended Complaint.

4. The defendants' Rule 12(b)(1) motion to dismiss plaintiff's claims for monetary damages against the individual defendants in their official capacity for failure to train and supervise is **GRANTED**, and the claims are **DISMISSED WITHOUT PREJUDICE**.

5. The defendants' Rule 12(b)(6) motion to dismiss plaintiff's claims against the individual defendants in their individual capacity for failure to train and supervise is **DENIED**.

6. The defendants' motion to dismiss plaintiffs' claims predicated on qualified immunity is **GRANTED**, and plaintiffs' claims against the individual defendants in their individual capacity for failure to train and supervise are **DISMISSED WITH PREJUDICE** as barred by qualified immunity.

7. The defendants' Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss plaintiffs' claims against defendant TDCJ for monetary damages under the ADA and the RA is **DENIED**.

8. The defendants' Rule 12(b)(1) motion to dismiss plaintiff's claims for a declaratory judgment against defendant TDCJ under Title II of the ADA is **GRANTED**, and the claims are **DISMISSED WITH PREJUDICE**.

9.    Plaintiff's claims against defendant TDCJ for injunctive enforcement of the 2017 *Wilson* settlement agreement are **DISMISSED WITHOUT PREJUDICE**.

10.   Plaintiff's claim for a declaratory judgment that defendant TDCJ breached the *Wilson* settlement agreement is **DISMISSED WITHOUT PREJUDICE**.

11.   The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims for breach of contract, and the claims are **DISMISSED WITHOUT PREJUDICE**.

12.   Any further dispositive motions shall be filed within **NINETY DAYS** from date of this order.

This is an **INTERLOCUTORY ORDER**.

Signed at Houston, Texas, on _____ SEP 2 1 2022 _____.

_____
ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE

24